1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EARL D. SMITH,                          No.  2:13-cv-2192 JAM AC P

12                  Plaintiff,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   R. RODRIGUEZ, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se in this civil rights action filed pursuant to 42

18   U.S.C. § 1983.  This action proceeds against three defendants on the following claims: Dr. Grant

19   Rogero, for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth

20   Amendment; correctional officer R. Rodriguez, for deliberate indifference to plaintiff's serious

21   medical needs and for retaliation in violation of the First Amendment; and correctional officer H.

22   Singh for failure to protect plaintiff in violation of the Eighth Amendment.  This order addresses

23   the parties' discovery disputes, plaintiff's request for subpoenas duces tecum, and defendant

24   Rogero's motion for summary judgment.[1]

25   ////

26   ////

27   _____

28   [1]  Defendant Rodriguez and Singh's pending motion for summary judgment, ECF No. 76, will be
     addressed in a separate order.

1

1    I.    Plaintiff's Allegations

2    Plaintiff alleges that on November 8, 2012, he experienced excruciating abdominal pain

3 and was rushed from Mule Creek State Prison to an outside hospital where a "c-scan x-ray" was

4 taken.  ECF No. 1 at 7.  After the CT scan was taken, defendant correctional officers Singh and

5 Rodriguez took plaintiff to a holding cell near defendant Rogero's[2] office.  From the holding cell,

6 plaintiff overheard defendant Dr. Rogero tell Singh and Rodriguez that plaintiff had a lacerated

7 spleen, a bleeding right kidney, and genital warts and should be scheduled for surgery

8 immediately.  Id. at 8.  Rodriguez told Dr. Rogero that plaintiff was a snitch who had a civil

9 lawsuit pending against several correctional officers, and asked Dr. Rogero to schedule plaintiff's

10 surgery in April so that plaintiff would not be able to go to trial.  Id. at 9. Dr. Rogero later

11 proposed another surgery date and Rodriguez again called plaintiff a snitch and made reference to

12 plaintiff's pending lawsuit.  Plaintiff remained in the hospital for three days and was returned to

13 prison without obtaining a scheduled surgery date.[3]

14    II.    Background Relevant to Discovery Issues

15    On September 30, 2015, the court issued an order addressing plaintiff's motions to compel

16 discovery from defendants Rogero and Rodriguez.  ECF No. 79.  Defendant Rogero was directed

17 to file a statement with the court indicating whether he received any of the following from San

18 Joaquin General Hospital by way of subpoena: (1) records related to medication plaintiff was

19 given; (2) a copy of plaintiff's November 8, 2012 CT scan; (3) the audio dictation recording

20 associated with plaintiff's CT scan; or (4) video footage of plaintiff shackled to his hospital bed.

21 If Rogero received any of these items, he was directed to produce them to plaintiff.

22    As to defendant Rodriguez, the court's September 30, 2015 order directed Rodriguez to

23 supplement his response to Interrogatories Nos. 3 and 9, Set Two.  With respect to Interrogatory

24 No. 3, Rodriguez was given the option of filing a statement with the court or providing his

25 

26 [2]  Although plaintiff refers to Dr. Rogero as "Delgados" through a good portion of his complaint,
in the Answer filed by this defendant, he is identified as Dr. Grant Rogero.  See ECF No. 27.  The

27 court will use the name of Rogero to identify this individual.
[3]  A more detailed summary of plaintiff's allegations is set forth in this court's order filed

28 December 23, 2014. See ECF No. 36 at 2-4.

1   supplemental response directly to plaintiff.  As to Interrogatory No. 9, Rodriguez was directed to

2   provide his supplemental response directly to plaintiff.  In all other respects, plaintiff's motions to

3   compel were denied.

4          On October 8, 2015, defendant Rogero filed a statement with the court indicating that, in

5   response to the court's September 30, 2015 order, he produced to plaintiff all of the records he

6   received from San Joaquin General Hospital by subpoena, including a DVD-R disk of plaintiff's

7   November 8, 2012 CT scan.  ECF No. 80 at 1-2, 6-7.  Defendant Rogero also confirmed in his

8   statement that he did not receive any dictation recording or video footage of plaintiff.  Id. at 3.

9          On October 18, 2015, plaintiff filed objections to defendant Rogero's October 8, 2015

10  statement.  ECF No. 84.  On the same date, plaintiff also filed a "motion to compel

11  interrogatories," seeking to compel defendant Rodriguez to comply with the court's September

12  30, 2015 order.  ECF No. 85.

13         On October 25, 2015, plaintiff filed further objections to defendant Rogero's October 8,

14  2015 statement.  ECF No. 87.

15         On November 3, 2015, defendant Rodriguez filed an opposition to plaintiff's motion to

16  compel interrogatories.  ECF No. 86.

17         III.    Plaintiff's Objections to Defendant Rogero's October 8, 2015 Statement

18         In his first set of objections, plaintiff contends that defendant Rogero failed to comply

19  with the court's September 30, 2015 order.  ECF No. 84.  Specifically, plaintiff claims that

20  Rogero's October 8, 2015 statement failed to address whether he had possession of the dictation

21  voice recording or the video footage requested by plaintiff.  Id. at 1-2, 3-4.  Plaintiff contends that

22  Rogero has not produced either of the items to plaintiff and that Rogero should be required to

23  provide a receipt of all the items he received by way of subpoena from San Joaquin General

24  Hospital.  Id. at 4.  In addition, plaintiff asserts that defendant Rogero sent the DVD-R disk of

25  plaintiff's November 8, 2012 CT scan to plaintiff in bad faith, knowing that the disk would be

26  confiscated by prison officials upon arrival.  Id. at 2-3.

27         In his second set of objections, plaintiff asserts that defendant Rogero has possession of

28  the voice recording associated with his November 8, 2012 CT scan, but is concealing it from

                                                3

1  plaintiff.[4]  ECF No. 87.  Plaintiff requests that the court issue an order directing defendant Rogero

2  or San Joaquin General Hospital to explain "why they are concealing information in a federal

3  civil action."  Id. at 3.

4       The court has reviewed defendant Rogero's October 8, 2015 statement, in which Rogero

5  clearly states that he did not receive any dictation recordings or any security footage as a result of

6  any subpoena.  See ECF No. 80 at 2-3.  In light of Rogero's representations, the undersigned

7  finds that Rogero has complied with the court's September 30, 2015 order and no further

8  production will be required.

9       As to plaintiff's claim that Rogero acted in bad faith when he produced a copy of

10  plaintiff's November 8, 2012 CT scan to plaintiff, plaintiff's contention is meritless.  Plaintiff

11  appears to assert that Rogero sent the disk to plaintiff, rather than to the court, because he knew it

12  would be confiscated by prison officials upon arrival.  Plaintiff explains that he wanted the disk to

13  be "logged with the court" rather than sent to plaintiff because "plaintiff is clearly not a doctor . . .

14  and has no means to review the [disk] except by the courts through a radiologist doctor."  ECF

15  No. 84 at 3.  Plaintiff is advised that he has no right to have defendant "log evidence" with the

16  court on his behalf.  Even if plaintiff's CT scan had been logged with the court, this would not

17  result in the scan being reviewed and interpreted by a radiologist on plaintiff's behalf.  Plaintiff's

18  objections are overruled.

19       IV.     Plaintiff's "Motion to Compel Interrogatories" from Defendant Rodriguez and

20               Request for Sanctions for Failure to Comply with a Court Order

21       In his "motion to compel interrogatories," plaintiff seeks to compel defendant Rodriguez

22  to comply with the court's September 30, 2015 by providing supplemental responses to plaintiff's

23  Request for Interrogatories, Set One, Nos. 3 and 9.  ECF No. 85 at 1.  Plaintiff claims that

24  because defendant Rodriguez has not provided plaintiff with any supplemental response as

25

---

26  [4]  Plaintiff explains that he requested the voice recording from Kern Valley State Prison and was
    informed that the recording could only be obtained from San Joaquin General Hospital.  Plaintiff
27  asserts that because defendant Rogero subpoenaed all video recordings and voice recordings of
    plaintiff from San Joaquin General Hospital, Rogero received a copy of the voice recording as a
28  result of the subpoena.  See ECF No. 87.

1   required by the court's September 30, 2015 order, Rodriguez is in violation of the court's order

2   and should be sanctioned. Id. at 2, 4-5.  Plaintiff further contends that he should be allowed to

3   use defendant Rodriguez's failure to respond as an admission that plaintiff was in a "holding cell"

4   while at San Joaquin General Hospital. Id. at 4.

5       In opposition, defendant Rodriguez asserts that he served plaintiff with supplemental

6   responses to plaintiff's first set of interrogatories, Nos. 3 and 9, on October 8, 2015.  ECF No. 86

7   at 2.  A copy of defendant's supplemental responses is attached as Exhibit 1 to defendant's

8   opposition.  ECF No. 86 Exh. 1 at 8-13.  Defendant asserts that sanctions are not warranted

9   because he complied with the court's September 30, 2015 order.

10      The court's September 30, 2015 order required defendant Rodriguez to supplement his

11   responses to Interrogatory Nos. 3 and 9 within ten days.  While it appears that plaintiff had not

12   yet received Rodriguez's responses when plaintiff filed his motion on October 18, 2015, the proof

13   of service attached to Rodriguez's supplemental responses is dated October 8, 2015.  ECF No. 86

14   at 13.  Accordingly, it appears that defendant Rodriguez provided supplemental responses to

15   plaintiff in a timely manner.  Plaintiff's motion to compel Rodriguez to comply with the court's

16   September 30, 2015 order is therefore denied.

17      To the extent plaintiff requests that defendant Rodriguez be sanctioned for his failure to

18   comply with the court's September 30, 2015 order, this request is also denied because defendant

19   provided plaintiff with supplemental responses to Interrogatory Nos. 3 and 9.  While the court

20   notes that Rodriguez should have filed a statement with the court (rather than responding directly

21   to plaintiff) if he was unable to determine whether the appeals filed against him included claims

22   of retaliation,[5] the error appears inadvertent.  Under these circumstances, the court finds that

23   
_____

24   [5]  Plaintiff's interrogatory No. 3 inquired as to whether defendant Rodriguez had previously had
     any 602 inmate appeals filed against him that included claims of retaliation.  Rodriguez

25   responded that he did not recall whether either of the two appeals filed against him involved
     retaliation claims.  In the court's September 30, 2015 order, Rodriguez was directed to either file

26   a statement with the court describing his efforts to respond to plaintiff's interrogatory, or, in the
     alternative, *to inform plaintiff whether the two appeals filed against him were for retaliation*.

27   Because defendant Rodriguez was unable to determine if the appeals filed against him included
     claims of retaliation, his explanation as to why he was unable to locate the information should

28   have been filed with the court.

1    sanctions are unwarranted.  Plaintiff's motion for sanctions is denied.

2         V.    Plaintiff's Requests for Subpoenas Duces Tecum

3         It has come to the court's attention that plaintiff's requests for subpoenas duces tecum

4    filed in January, February, and March 2015 remain outstanding.  Plaintiff seeks court orders

5    granting three subpoenas duces tecum, production of documents, and service of the subpoenas by

6    the U.S. Marshall.  See ECF Nos. 44, 53, 57.  Plaintiff requests that the court direct the U.S.

7    Marshall to serve a subpoena duces tecum upon non-parties San Joaquin General Hospital, Mule

8    Creek State Prison, and Kern Valley State Prison.  See id.

9         A. Legal Standards

10        A subpoena may direct a non-party, pursuant to Federal Rule of Civil Procedure 45, to

11   produce documents or other tangible objects for inspection.  The court must "issue and serve all

12   process and perform all such duties" for a plaintiff proceeding in forma pauperis.  28 U.S.C. §

13   1915(d).  Plaintiff, proceeding in forma pauperis, thus "is generally entitled to obtain service of a

14   subpoena duces tecum by the United States Marshal. 28 U.S.C. § 1915(d)."  Heilman v. Lyons,

15   2:09-cv-2721 KJN P, 2010 WL 5168871, *1 (E.D. Cal. Dec. 13, 2010); but see, Garcia v. Grimm,

16   2012 WL 216565, * 4 (S.D. Cal. Jan. 23, 2012) (citing Tedder v. Odel, 890 F.2d 210, 211, 212

17   (9th Cir.1989) ("Plaintiff, however, is responsible for paying all fees and costs associated with the

18   subpoenas . . . fees are not waived based on Plaintiff's in forma pauperis status").

19        Because Federal Rule of Civil Procedure 45(b) requires personal service of a subpoena,

20   "[d]irecting the Marshal's Office to expend its resources personally serving a subpoena is not

21   taken lightly by the court."  Austin v. Winett, 1:04-cv-05104-DLB PC, 2008 WL 5213414, *1

22   (E.D. Cal. Dec. 12, 2008); 28 U.S.C. § 1915(d).  Limitations on a subpoena include the relevance

23   of the information sought as well as the burden and expense to the non-party in providing the

24   requested information. Fed. R. Civ. P. 26, 45.  A motion for issuance of a subpoena duces tecum

25   should be supported by clear identification of the documents sought and a showing that the

26   records are obtainable only through the identified third-party.  See, e.g., Davis v. Ramen, 1:06-cv-

27   01216-AWI-SKO PC, 2010 WL 1948560, at *1 (E.D. Cal. May 11, 2010); Williams v. Adams,

28   No. 1:05-cv-00124-AWI-SMS PC, 2010 WL 148703, at *1 (E.D. Cal. Jan. 14, 2010).  "The

Federal Rules of Civil Procedure were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena duces tecum." Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991).  Non-parties are "entitled to have the benefit of this Court's vigilance" in considering these factors.  Badman, 139 F.R.D. at 605.

B. Discussion

The subpoenas that plaintiff has submitted are defective inasmuch as they are not signed by the Clerk of the Court.  Federal Rule of Civil Procedure 45(a)(3) requires that "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it.  That party must complete it before service."  Therefore, at the outset, a new subpoena, blank but signed by the Clerk of the Court, must issue to plaintiff.

i. San Joaquin General Hospital (ECF No. 44)

Plaintiff seeks to subpoena copies of the following documents from the Custodian of Records for San Joaquin General Hospital:

1. Seven photographs, taken from various angles, of a "holding cell" inside San Joaquin General Hospital.  See ECF No. 44 at 2.

2. A complete copy of all "med log's" of medication given to plaintiff during his stay at San Joaquin General Hospital from November 8, 2012 through November 10, 2012. ECF No. 44 at 3.

3. A copy of plaintiff's "actual c-scan" taken on November 8, 2012 by Linda Hodges. ECF No. 44 at 3.

4. A copy of the "actual CDCR security video footage of plaintiff Earl D. Smith shackled to hospital bed for two plus days."  ECF No. 44 at 3.

5. Copies of any rules or memoranda "governing CDCR prisoners while being held at San Joaquin General Hospital on a medical stay."  ECF No. 44 at 3.

Plaintiff again appears to seek photographs that do not already exist.  See ECF No. 44 at 2. Plaintiff has previously been advised that the court will not require defendants to take photographs or create evidence for plaintiff.  For the same reasons, the court will not require non-party San Joaquin General Hospital to take photographs or create evidence for plaintiff.  With respect to the photographs, plaintiff's request for a subpoena accordingly is denied.

1    Plaintiff's request for copies of his "med log's" and his November 8, 2012 CT scan is

2    denied as moot since defendant Rogero has provided plaintiff with the requested items.

3    With respect to plaintiff's request for video footage of plaintiff shackled to his hospital

4    bed at San Joaquin General Hospital, it is not clear that this footage exists, as defendant Rogero

5    already subpoenaed any recordings of plaintiff from San Joaquin General Hospital and did not

6    receive any video footage as a result of his subpoena.  However, if plaintiff's case proceeds to

7    trial, such footage would be relevant in that it could provide additional evidence of plaintiff's

8    contact with defendants and other doctors.[6]  Furthermore, the court is satisfied that if the footage

9    exists, it is likely obtainable only through San Joaquin General Hospital.  Accordingly, plaintiff

10   shall be permitted to subpoena the video footage from San Joaquin General Hospital.  In his

11   request, plaintiff should specify the date of the requested footage, i.e. November 8, 2012 through

12   November 11, 2012.

13   Plaintiff's also requests copies of any rules or memoranda that govern CDCR prisoners

14   "being held at San Joaquin General Hospital on a medical stay."  Plaintiff made a similar,

15   although not identical, request to defendant Rogero,[7] who indicated that he did not have

16   possession, custody, or control of the requested documents.  Because plaintiff appears to be

17   asking for copies of San Joaquin General Hospital's policies with respect to CDCR inmate

18   patients, rather than CDCR's own policies governing those same patients, the court is satisfied

19   that the documents requested are likely obtainable only through third party San Joaquin General

20   Hospital.  Plaintiff will be permitted to subpoena these policies from San Joaquin General

21   Hospital, which may provide additional support for plaintiff's account of the events that occurred

22   during plaintiff's stay at San Joaquin General Hospital in November 2012.  However, plaintiff

23   will be required to limit his request to the policies that were in effect in November 2012.

24

25   [6]  The existence of this footage is not determinative of the pending motions for summary

26   judgment because on summary judgment plaintiff's verified allegations of contact with
     defendants and other medical staff are taken as true.

27   [7] Request for Production of Documents No. 5, Set Two, sought the following from defendant
     Rogero: "Copy's of any memorandums documents governing rules of security of hospital in

28   regards to the inmate ward part of hospital where inmates are admitted."  ECF No. 35 at 4.

1    In sum, plaintiff will be allowed to subpoena the following from San Joaquin General

2  Hospital: (1) security video footage of plaintiff shackled to a hospital bed in San Joaquin General

3  Hospital for two or more days beginning on November 8, 2012; and (2) copies of any hospital

4  rules or memoranda that were in effect in November 2012 governing CDCR prisoners being held

5  at San Joaquin General Hospital during a medical stay.

6    Plaintiff will be provided a new subpoena form and must return it within 30 days.  His

7  amended subpoena must contain only the document requests as narrowed and set forth

8  immediately above.  Plaintiff's subpoena form should designate a reasonable time, place, and

9  manner for production.  Compliance with this order is required for the court to direct the U.S.

10  Marshall to serve a subpoena duces tecum.

11    Discovery will be reopened for the limited purpose of allowing plaintiff's subpoena duces

12  tecum, as limited herein, to be served on non-party San Joaquin General Hospital.  In the court's

13  view, the documents at issue in the subpoena will not be determinative of defendants' motions for

14  summary judgment, so supplemental briefing will not be required.  However, if plaintiff believes

15  that either item bears on defendants Rodriguez and Singh's pending motion for summary

16  judgment, plaintiff may file a request for leave to file a supplemental brief.[8]

17                    ii.   Mule Creek State Prison (ECF No. 53)

18    In his next request, plaintiff requests that he be permitted to subpoena from the Custodian

19  of Records for Mule Creek State Prison "all previous civil complaints filed by inmates against

20  defendant R. Rodriguez, including all 602's."  ECF No. 53 at 2.  Plaintiff asserts that defendant's

21  "work history" is relevant to proving plaintiff's claims that defendant Rodriguez retaliated against

22  plaintiff and was deliberately indifferent to plaintiff's serious medical needs.  Id. at 2.  Plaintiff

23  appears to assert that the requested documents will be relevant to proving "present and prior bad

24  acts in [Rodriguez's] dealings while [e]mployed by (CDCR) with inmate prisoners."  Id.

25    At the outset, the court notes that plaintiff has made no showing as to why he could not

26  obtain these documents by way of discovery propounded on defendant Rodriguez.  However, the

27
_____

28  [8]  The court has determined that neither item will affect the court's resolution of defendant
Rogero's motion for summary judgment.

9

1    court notes that in response to the court's September 30, 2015 order directing defendant

2    Rodriguez to supplement his response to plaintiff's interrogatory inquiring whether any inmates

3    had filed inmate appeals against Rodriguez that included claims of retaliation, defendant

4    Rodriguez indicated that he was unable to answer that question.  See ECF No. 86 at 2-3.

5    Specifically, counsel for defendants filed a declaration explaining that she requested

6    documentation from CDCR regarding any staff complaints initiated against defendant Rodriguez.

7    Id. at 5.  Counsel explained that the inmate/parolee appeals tracking system printout provided by

8    CDCR indicated that only one staff complaint had been initiated against defendant Rodriguez.  Id.

9    Counsel stated in her declaration that no other record of this appeal (log number MCSP-A-07-

10   1593) exists, aside from the inmate/appeals tracking printout.  Id.  Pursuant to CDCR's document

11   retention policy, staff complaints are considered active until resolved, retained for five years, and

12   then shredded.  As the appeal in question was filed in 2007, it has since been shredded.  See id. at

13   5-6.  In light of counsel's sworn declaration that a copy of the only inmate appeal filed against

14   defendant Rodriguez no longer exists, it would be futile to permit plaintiff to subpoena this

15   document from Mule Creek State Prison.  Accordingly, plaintiff's request to subpoena all inmate

16   complaints filed against defendant Rodriguez is denied.

17        To the extent plaintiff seeks to subpoena all previous civil complaints filed against

18   defendant Rodriguez from Mule Creek State Prison, plaintiff again fails to explain why he could

19   not obtain this information by way of discovery propounded on defendant Rodriguez.  Here, the

20   court notes that defendant Rodriguez has already stated under oath that as far as he is aware,

21   while employed by CDCR, he has been named as a defendant only in the instant civil lawsuit.

22   See ECF No. 79 at 25.  Accordingly, it appears that allowing plaintiff to serve a subpoena for

23   these documents would be futile, as defendant Rodriguez has not been named as a defendant in

24   any other inmate lawsuits.  Plaintiff's request for a subpoena is denied.

25                          iii.  Kern Valley State Prison (ECF No. 57)

26        In his final request, plaintiff seeks to subpoena the following documents from the

27   Custodian of Records for Kern Valley State Prison, where he is currently incarcerated:

28        1.  A copy of plaintiff's "c-scan x-ray" taken on February 18, 2015.  ECF No. 57 at 2.

2.  A copy of all medical records pertaining to health care given to plaintiff while in

CDCR custody, including all blood tests with results and a complete copy of

plaintiff's medical file that is electronically stored by CDCR.  ECF No. 57 at 3.

To the extent plaintiff requests a copy of the results of his February 18, 2015 CT scan,

plaintiff's request is denied as moot because defendants Rodriguez and Singh have provided

plaintiff with a copy of this report.  See ECF No. 76-3, Exh. V at 83.

To the extent plaintiff requests a copy of the x-ray image of his February 18, 2015 CT

scan, plaintiff does not explain why he could not obtain this item by way of discovery

propounded on defendants Singh and Rodriguez, who appear to have access to the scan.  See ECF

No. 76-3 at 8.  The court notes that plaintiff once again requests that the scan be forwarded to the

court to be marked as evidence rather than produced directly to plaintiff.  See ECF No. 57 at 2.

To the extent plaintiff believes that the court will interpret the scan through a radiologist if the

court receives a copy of plaintiff's scan, plaintiff is mistaken.  Like plaintiff, the court cannot

interpret the scan without a medical expert.  At this stage of the proceedings, no medical expert

has been appointed.[9]  Plaintiff's request to subpoena the x-ray image from his February 18, 2015

CT scan, for forwarding to the court, will be denied at this time.  However, if plaintiff wishes to

view the scan himself, he may file a request with the court, and the court will direct counsel for

defendants Singh and Rodriguez to make arrangements for plaintiff to view the scan.[10]

As to plaintiff's request for copies of his prison medical file and blood test results,

plaintiff does not explain why he cannot obtain this same information by reviewing his medical

file through the prison's "Olsen review" process.  Plaintiff does not allege that he attempted to

review his medical file or that his requests to review his file have been denied.  Moreover, the

medical records plaintiff has submitted thus far suggest that plaintiff has access to his medical

records, including blood test results.  In light of plaintiff's apparent ability to review his medical

---

[9]  For these reasons, the availability of the image of plaintiff's February 18, 2015 CT scan has no
bearing on either of defendants' pending motions for summary judgment.

[10]  In light of plaintiff's prior assertion that he is "not a doctor" and cannot interpret CT scans on
his own, and his general objections to the November 8, 2012 CT scan being sent to him in prison,
the court does not interpret plaintiff's current subpoena request to ask that the February 18, 2015
CT scan be produced to plaintiff himself.

1   file through the Olsen review process, plaintiff's request to subpoena his medical records from

2   Kern Valley State Prison is denied.

3        VI.     Defendant Rogero's Motion for Summary Judgment

4        Plaintiff proceeds against defendant Rogero for alleged violations of plaintiff's rights

5   under the Eighth Amendment.  Specifically, plaintiff claims that on November 8, 2012, defendant

6   radiologist Dr. Rogero was deliberately indifferent to plaintiff's serious medical needs when he

7   reviewed plaintiff's CT scan and determined that plaintiff required surgery due to a lacerated

8   spleen and bleeding kidney, but failed to schedule plaintiff for surgery.  See ECF No. 1.

9        Defendant Rogero moves for summary judgment the grounds that plaintiff did not have a

10  serious medical need that required surgery on November 8, 2012 and defendant Rogero did not

11  act with deliberate indifference when he reviewed plaintiff's CT scan.  ECF No. 69-2 at 1-2.

12              A.  Legal Standards for Summary Judgment

13       Summary judgment is appropriate when the moving party "shows that there is no genuine

14  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

15  Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

16  proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

17  v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

18  (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

19  this by "citing to particular parts of materials in the record, including depositions, documents,

20  electronically stored information, affidavits or declarations, stipulations (including those made for

21  purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

22  that such materials "do not establish the absence or presence of a genuine dispute, or that the

23  adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

24  P. 56(c)(1)(A), (B).

25       When the non-moving party bears the burden of proof at trial, "the moving party need

26  only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

27  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

28  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

12

1    against a party who fails to make a showing sufficient to establish the existence of an element

2    essential to that party's case, and on which that party will bear the burden of proof at trial.  See

3    Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

4    nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

5    circumstance, summary judgment should be granted, "so long as whatever is before the district

6    court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

7         If the moving party meets its initial responsibility, the burden then shifts to the opposing

8    party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

9    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

10   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

11   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

12   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

13   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] Plaintiff's verified complaint

14   may be considered as an affidavit in opposition to summary judgment if it is based on personal

15   knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122,

16   1132 n.14 (9th Cir. 2000) (en banc).[11]

17        The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

18   might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

19   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

20   F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

21   reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

22   Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

23        In the endeavor to establish the existence of a factual dispute, the opposing party need not

24   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

27

28   [11]  Plaintiff filed a verified complaint in this case.  See ECF No. 1.

1 | the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

2 | Matsushita, 475 U .S. at 587 (citations omitted).

3 |       "In evaluating the evidence to determine whether there is a genuine issue of fact," the

4 | court draws "all reasonable inferences supported by the evidence in favor of the non-moving

5 | party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per

6 | curiam). It is the opposing party's obligation to produce a factual predicate from which the

7 | inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45

8 | (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine

9 | issue, the opposing party "must do more than simply show that there is some metaphysical doubt

10 | as to the material facts. … Where the record taken as a whole could not lead a rational trier of

11 | fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at

12 | 587 (citation omitted).

13 |       In applying these rules, district courts must "construe liberally motion papers and

14 | pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

15 | Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly

16 | support an assertion of fact or fails to properly address another party's assertion of fact, as

17 | required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion

18 | …." Fed. R. Civ. P. 56(e)(2).

19 |                 B. Legal Standard for Eighth Amendment Claim

20 |       In order to state a §1983 claim for violation of the Eighth Amendment based on

21 | inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

22 | deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

23 | To prevail, plaintiff must show both that his medical needs were objectively serious, and that

24 | defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299

25 | (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite

26 | state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1,

27 | 5 (1992).

28 | ////

1    A serious medical need exists if the failure to treat a prisoner's condition could result in

2    further significant injury or the unnecessary and wanton infliction of pain.  Indications that a

3    prisoner has a serious need for medical treatment are the following:  the existence of an injury

4    that a reasonable doctor or patient would find important and worthy of comment or treatment; the

5    presence of a medical condition that significantly affects an individual's daily activities; or the

6    existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F.2d 1332, 1337-

7    41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).

8    McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX

9    Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

10    In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

11    demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

12    at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

13    which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

14    violation.  Id. at 836-37.  It not enough that a reasonable person would have known of the risk or

15    that a defendant should have known of the risk.  Id. at 842.  Rather, deliberate indifference is

16    established only where the defendant subjectively "knows of and disregards an excessive risk to

17    inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

18    citation omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or

19    failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

20    indifference."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

21    A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth

22    Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.1989).  A failure to

23    competently treat a serious medical condition, even if some treatment is prescribed, may

24    constitute deliberate indifference in a particular case.  Id.  However, "[a] difference of opinion

25    between a physician and the prisoner – or between medical professionals – concerning what

26    medical care is appropriate does not [without more] amount to deliberate of indifference."  Snow

27    v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled on other grounds, Peralta v. Dillard,

28    744 F.3d 1076, 1083 (9th Cir. 2014).  To establish that the difference of opinion rises to the level

1  of deliberate indifference, a prisoner must show that the defendant's chosen course of treatment

2  was medically unacceptable and in conscious disregard of an excessive risk to plaintiff's health.

3  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  Furthermore, in cases involving complex

4  medical issues where plaintiff contests the type of treatment he received, expert opinion will

5  almost always be necessary to establish the necessary level of deliberate indifference.

6  Hutchinson v. United States, 838 F.2d 390 (9th Cir.1988).

7             C.  Arguments of the Parties

8                  i.  Defendant

9       Defendant Rogero contends that summary judgment is warranted because plaintiff did not

10  have a serious medical need on November 8, 2012 and did not require surgery.  ECF No. 69-2 at

11  1.  Defendant asserts that, as a radiologist contracted to work at San Joaquin General Hospital, he

12  reviewed plaintiff's November 8, 2012 CT scan and submitted a report finding that plaintiff's

13  liver, spleen, adrenals, and kidneys were "unremarkable."  Id. at 2.  Defendant contends that he

14  has never met plaintiff and, beyond interpreting plaintiff's CT scan, did not make any decisions

15  regarding plaintiff's medical treatment or whether surgery was appropriate.  Id.  In support of his

16  motion for summary judgment, defendant provides the declaration of Dr. Arthur Dublin, who

17  opines that plaintiff's November 8, 2012 CT scan was normal, there was no evidence that plaintiff

18  required surgery, and, in Dr. Dublin's professional medical opinion, defendant Rogero's review

19  of plaintiff's CT scan was appropriate and medically acceptable.  ECF No. 69-4 at 1-2.

20  Defendant asserts that in light of the complete lack of evidence supporting plaintiff's claim that

21  he required surgery due to a bleeding kidney and lacerated spleen, defendant is entitled to

22  summary judgment.  ECF No. 69-2 at 2, 6.

23                  ii.  Plaintiff's Opposition

24       Plaintiff filed an opposition to defendant's motion for summary judgment, ECF No. 70, as

25  well as a statement of disputed facts, ECF No. 71.  It is well-established that the pleadings of pro

26  se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."

27  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must

28  follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565,

16

1   567 (9th Cir. 1987), overruled on another ground by Lacey v. Maricopa County, 693 F.3d 896

2   (9th Cir. 2012) (en banc).  However, the unrepresented prisoners' choice to proceed without

3   counsel "is less than voluntary" and they are subject to the "handicaps . . . detention necessarily

4   imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

5   Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore,

6   should not be held to a standard of "strict literalness" with respect to the requirements of the

7   summary judgment rule.  Id.

8        The court is mindful of the Ninth Circuit's more overarching caution in this context, as

9   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

10  pro se inmates and . . . avoid applying summary judgment rules strictly."  Ponder, 611 F.3d

11  at 1150.  Accordingly, the court considers the record before it in its entirety despite plaintiff's

12  failure to be in strict compliance with the applicable rules.  However, only those assertions in the

13  opposition which have evidentiary support will be considered.

14       In opposition to defendant's summary judgment motion, plaintiff maintains that he heard

15  defendant Rogero tell defendants Rodriguez and Singh that plaintiff had a lacerated spleen, a

16  bleeding right kidney, and a genital wart, and that plaintiff needed to be scheduled for surgery.

17  See ECF No. 71 at 2.  Plaintiff asserts that the reason plaintiff's medical records do not reflect

18  this diagnosis is because defendant Rogero changed his report after speaking with defendants

19  Rodriguez and Singh about plaintiff's upcoming trial in another lawsuit.  See id.  Plaintiff admits

20  that he has not yet received surgery or been told by another doctor that he needs surgery, but

21  contends that this is because prison staff are aware of the instant lawsuit and are covering up

22  plaintiff's true test results.  See id. at 4-5.  Plaintiff contends that after he returned to prison, his

23  abdominal pain continued and he eventually began to see blood in his urine, which is evidence

24  that plaintiff requires surgery and that prison staff are covering up plaintiff's test results.  See id.

25  With respect to Dr. Dublin's declaration, plaintiff appears to assert that the reason Dr. Dublin

26  concluded that plaintiff's November 8, 2012 CT scan was normal is because defendant Rogero

27  altered the scan before Dr. Dublin reviewed it.  See ECF No. 71 at 7-8.  Plaintiff also asserts that

28  Dr. Dublin's conclusion is inconsistent with plaintiff's medical records.  Id.

17

In support of his opposition, plaintiff submits medical records, several health care appeals related to a CT scan that was taken in 2015, and plaintiff's own declaration.  See ECF No. 71 at 18-40.

D.  Undisputed Facts[12]

- At all times relevant, plaintiff was an inmate incarcerated at Mule Creek State Prison.  See ECF No. 1 at 7.

- Defendant Grant Rogero is a licensed physician and radiologist.  ECF No. 27

- On November 8, 2012, plaintiff was taken from Mule Creek State Prison to San Joaquin General Hospital due to complaints of abdominal pain.  ECF No. 69-7 at 13; ECF No. 1 at 7.

- On November 8, 2012, plaintiff had a CT scan of his abdomen and pelvis at San Joaquin General Hospital.  ECF No. 69-7 at 12.

- On November 8, 2012, defendant Rogero reviewed the CT scan.  ECF No. 69-7 at 12.

- Defendant Rogero's report, dated November 8, 2012, stated:

    FINDINGS: The lung bases appear clear.  Liver, spleen, adrenals and kidneys are unremarkable.  There is considerable stool throughout the colon.  There is no free air.  Trace free fluid is seen in the right lower quadrant at the cecal tip.  Appendix is never definitively identified.  It may be present on axial images 54 and 55.  There is no bowel obstruction.

ECF No. 69-7 at 12.

- The technician listed on defendant Rogero's report is Linda Hodges.  ECF No. 69-7 at 12.

- On November 8, 2012, a "History & Physical" report was prepared by Dr. Tarig Samarkandy.  ECF No. 1 at 27.  The report states in relevant part:

    Admitting Diagnosis: Abdominal pain.

    History of Present Illness:  This is a 39-year-old male who has been referred from Mule Creek Prison presenting with a one day history of nonspecific abdominal pain.  Patient mentioned that he ate something last night and claims that his jail mate put bleach in his food and when he ate it he felt bad, the next day having severe abdominal pain in the periumbilical and lower abdomen.  No associated nausea or vomiting was noted.  No change in bowel habits.  No fevers, chills, or rigors were noted.  The patient denies any history of anorexia or loss of appetite; however, he feels

---

[12]  Relevant factual disputes are noted.

18

hungry. No history of chest pain.   Review of other systems unremarkable.

Past Medical History: Unremarkable.

Past Surgical History: Anal fissure.  Patient had a fistulotomy in 2009.  Genital warts.  Gunshot wound to the neck a long time ago with surgery.  The patient currently has some weakness; however, it has resolved.

. . .

Imaging: The patient had a CT scan of the abdomen and pelvis on admission which showed no free air and a trace free fluid seen in the lower right quadrant at the cecal tip.  Appendix is not identified. There is no sign of bowel obstruction.  There was a large amount of stool throughout the entire colon.

Assessment and Plan: This is a 39-year-old male presenting with nonspecific abdominal pain of unknown etiology.  Will observe that patient clinically with serial abdominal exams, follow-up his labs, and if the patient is getting worse will entertain surgical options.

ECF No. 1 at 27-28.

- On November 9, 2012, a "Transfer Summary" report was prepared and signed by Hazel-Kay Yurong, NP and Dr. Ahmed Mahmoud.  The report indicates that plaintiff was admitted to SJGH on November 8, 2012 and transferred on November 9, 2012.[13]  The SJGH Transfer Summary states:

Admitting diagnosis: Abdominal pain.

Discharge diagnosis: Abdominal pain.

Hospital Course: The patient is a 39-year-old male who presented to San Joaquin General Hospital from Mule Creek State Prison on November 8, 2012, with a one-day history of nonspecific abdominal pain.  The patient stated symptoms began after he ate the night prior to presentation.  Patient claimed his jail mate put bleach in his food, which caused the symptoms.  The patient denied any nausea or vomiting, no change in bowel habits.  Denied fever, chills.  Denied any history of anorexia or loss of appetite.  CT scan of the abdomen and pelvis was performed on admission.  Results demonstrated a trace free fluid seen in the right lower at the cecal tip.  Appendix was not identified.  There was no sign of bowel obstruction, however, there was a large amount of stool throughout the entire colon.

---

[13]  Plaintiff disputes that he was discharged on November 9, 2012.  According to plaintiff, he stayed in the hospital for three days and was not discharged until November 11, 2012.  See ECF No. 71 at 2-3.

On physical examination, the patient's abdomen was noted to be soft, nondistended, with nonspecific tenderness in the periumbilical and lower abdomen.  No rebound tenderness or guarding was seen.

The decision was made to keep the patient NPO and start IV fluids. During hospitalization, the patient continued to complain of right upper quadrant and left upper quadrant abdominal pain.  The patient did not experience nausea, vomiting, or diarrhea during hospitalization.  Throughout hospitalization, the patient remained hemodynamically stable.   Surgical interventions were deemed unnecessary.  Upon discharge, the patient was able to tolerate a regular diet and denied any abdominal pain.

Laboratory results demonstrated a normal white blood cell count. Dr. Rudas was made aware of patient's health status and has agreed to accept the patient back to Mule Creek State Prison.

Condition and Disposition:  On discharge, the patient is in safe and stable condition for discharge.[14]

ECF No. 69-7 at 13.

- Plaintiff was discharged from the hospital without being scheduled for surgery.  See ECF No. 69-7 at 13; ECF No. 1 at 15.

- Plaintiff has not had any surgeries since November 8, 2012.  ECF No. 69-7 at 32 (Plaintiff's Deposition).

- No doctor has informed plaintiff that he requires surgery since November 8, 2012.  ECF No. 69-7 at 32 (Plaintiff's Deposition).

- Dr. Arthur Dublin is a licensed physician and radiologist.  ECF No. 69-4 at 1 (Declaration of Arthur Dublin, M.D.) ("Dublin Declr.").

- Dr. Dublin declares that he reviewed plaintiff's CT scan and medical records maintained by San Joaquin General Hospital, Diagnostic Imaging Department.[15]  Dublin Declr. at ¶¶ 2-3.

- According to Dr. Dublin, plaintiff's November 8, 2012 CT scan was normal, with the exception of a benign 2 cm cyst of the left kidney.  There was no evidence of appendicitis, internal trauma, or a splenic laceration.  There was no evidence of trauma or injury which required plaintiff to undergo surgery.[16]  Dublin Declr. at ¶¶ 4-7.

---

[14]  Plaintiff agrees that Dr. Mahmoud "may have been the doctor that discharged plaintiff," but contends that he was not the doctor who examined plaintiff.  ECF No. 71 at 3.

[15]  Plaintiff does not dispute that Dr. Dublin reviewed his medical records, but appears to assert that defendant Rogero altered plaintiff's records before Dr. Dublin reviewed them.  See ECF No. 71 at 6-7.

[16]  Plaintiff appears to assert that Dr. Dublin concluded plaintiff's CT scan was normal because defendant Rogero changed the CT scan before Dr. Dublin reviewed it.  See ECF No. 71 at 6-7.

- Based on Dr. Dublin's education, training, and experience, as well as his review of plaintiff's CT scan, it is Dr. Dublin's professional opinion that defendant Rogero's interpretation of plaintiff's CT scan was medically appropriate, routine, and met the standard of care.  Dublin Declr. at ¶ 8.

        E.   Plaintiff's Verified Allegations

- On November 8, 2012, plaintiff experienced excruciating abdominal pain and was rushed on an emergency basis from Mule Creek State Prison to an outside hospital where a "c-scan x-ray" was taken.  ECF No. 1 at 7.

- After the "c-scan" was taken, nurse Linda Hodges gave plaintiff's x-ray to defendant correctional officer Rodriguez.  Id. at 7.

- Plaintiff was then pushed in a wheelchair in excruciating pain to defendant Dr. Rogero's office, where plaintiff's x-ray could be read.  Id. at 8.

- Plaintiff was taken into a holding cell less than five feet away from Dr. Rogero's office.  The holding cell had a steel door with a slot in the middle for officers to use to talk to inmates.  Id. at 8.

- Defendant correctional officers Singh and Rodriguez took plaintiff's c-scan x-ray into Dr. Rogero's office to be read.

- Less than ten minutes later, plaintiff heard Dr. Rogero come out of his office and start explaining to Rodriguez and Singh what was wrong with plaintiff.  Specifically, Dr. Rogero said that plaintiff had a lacerated spleen, a bleeding right kidney, and a genital wart.  Id. at 8.

- Dr. Rogero said that plaintiff "shouldn't be like this" and that he was "scheduling [plaintiff] for surgery right then."  Id. at 8.

- Dr. Rogero went back into his office to schedule plaintiff's surgery date.  Id. at 8.

- Approximately two minutes later, Dr. Rogero walked out of his office and told defendants Singh and Rodriguez plaintiff's surgery date.  Id. at 8.

- Plaintiff heard Rodriguez say, "That's too soon."  Id. at 8.

- Dr. Rogero said, "If this guy doesn't get surgery he could die."  Id.

- Rodriguez responded, "The reason [plaintiff] is like this is because he is a snitch."  Id. at 8-9.

---

Plaintiff asserts that rather than reviewing the medical records provided by defendant Rogero, Dr. Dublin should have conducted his own in-person examination of plaintiff and conducted another CT scan.  See id. at 7-8.

1

2
- Rodriguez then told Dr. Rogero that plaintiff has a pending civil lawsuit against some correctional officers that will go to trial in April.

3
- Rodriguez asked Dr. Rogero to schedule plaintiff's surgery date sometime in April so that plaintiff would be unable to go to trial. Id. at 9.

4

5
- Dr. Rogero went back in to his office. Id.

6
- Dr. Rogero returned with another surgery date and defendant Rodriguez again said that plaintiff had a pending civil lawsuit against CDCR officers. Id. at 12.

7

8

9

10

11
- Approximately twenty minutes later, Singh and Rodriguez retrieved plaintiff from the holding cell. Id. at 10. Plaintiff remained shackled to the wheelchair in excruciating pain. Plaintiff asked Rodriguez what the doctor said and Rodriguez responded that he did not know. Plaintiff asked Rodriguez why they were going near the elevator and Rodriguez said, "Oh, the doctor said you are staying overnight in the hospital to see what is wrong with you." Id. at 10-11. Plaintiff was then taken to a room on a different floor and shackled to a hospital bed in excruciating pain. Id. at 11.

12

13

14
- Twenty minutes later, Dr. Rogero entered plaintiff's room and said, "What's the problem" – "as [though] he was going to intentionally ignore" the conversation that had taken place between Rogero, Rodriguez, and Singh regarding plaintiff's medical problems. Id. at 12-13.

15

16
- Plaintiff told Dr. Rogero that he previously had stomach problems from bleach being put in his food.[17] Rogero asked plaintiff where the pain was. Plaintiff indicated that the pain was in the "left spleen area" and the "right kidney area." Id. at 13.

17

18
- Dr. Rogero started to examine plaintiff, pushing on the left side as plaintiff yelled out in pain. Id. Rogero then pressed on plaintiff's right kidney area and plaintiff again yelled out in pain. Id.

19

20
- Dr. Rogero said to plaintiff, "The nurse will be in to ask you medical questions and take urine and blood from you." Id. Rogero then left the room. Id.

21

22

23
- Approximately ten minutes later, a nurse came into plaintiff's room. She took blood and urine from plaintiff and asked plaintiff medical questions. Id. at 13. Plaintiff explained to her that he was in excruciating pain and asked for pain medication. The nurse left and returned five minutes later with pain medication. Id. at 13-14.

24

25
- The following day, Dr. Rogero came to plaintiff's hospital room and asked if plaintiff was still in pain. Plaintiff said yes.

26
- Plaintiff told Dr. Rogero that he had not eaten in two days and asked if he could something to eat.

27

28
---
[17] Defendant Rogero maintains that he has never met or spoken with plaintiff.

22

- Dr. Rogero responded, "No you can't eat, because you need surgery and if you eat the meds we put you to sleep with may make you choke and bring the food up and that may kill you." Id. Defendant then left the room. Id.

- On the third day, plaintiff was still in the hospital and had not eaten. Id.

- Dr. Rogero said to plaintiff, "I won't introduce you to the surgeon." Id. Rogero then left the room. Id.

- Three minutes later, the surgeon entered the room with Dr. Rogero.

- Dr. Rogero explained to the surgeon where plaintiff's pain was. Id. The surgeon said, "Ok." Id.

- Later that day, correctional officers entered plaintiff's room and told plaintiff that Dr. Rogero had signed a release for plaintiff to return to prison. Id. at 14-15.

- Plaintiff told the officers he was still in pain. Id. The officers said that plaintiff still had to return to prison. Id.

- Plaintiff alleges that he returned to prison that day "without obtaining adequate medical care of that being surgery." Id.

- On November 16, 2012, plaintiff was seen by a prison physician for follow up regarding his November 8, 2012 hospitalization at SJGH. See ECF No. 71 at 18. The physician noted that plaintiff had been "sent to SJGH hospital on 11/8/12 for abdominal pain. [Plaintiff] had labs and a CT scan done, which basically showed colon full of stool and constipation. [Plaintiff] still complains of persistent pain in the RUQ/RLQ. He says it feels a sharp pain, comes and goes. When it gets bad, it starts to feel really hot and he feels a burning sensation going down his RLE all the way down to his toes." Id.

   Under "assessment," the progress notes states, "RUQ/RLQ abdominal pain: suspect pt. has functional abd pain (IBS) vs. side effect of hyponatremia. Pt. has very atypical symptoms and had a very benign CT scan on 11/8/12 at SJGH. Pt. was found to have a significant hyponatremia, which was not addressed by the hospital staff, and is likely a side effect of the tegretol." Id.

- In February 2013, plaintiff filed a health care appeal alleging that on January 28, 2013, a nurse found blood in plaintiff's urine. ECF No. 1 at 44. Plaintiff alleged that he continued to experience pain in his kidney and bladder area. See id. at 45. Plaintiff alleged that his "stomach" test results came back negative and that that he was told his symptoms might indicate irritable bowel syndrome. Plaintiff alleged that he believes the results "were intentionally found to be negative" because of the instant lawsuit. See id. at 46.

- The responses to plaintiff's appeal indicate that plaintiff had an ultrasound performed on January 30, 2013, which was generally unremarkable. See ECF No. 1 at 51. The appeal response further indicates that plaintiff was seen several times in March 2013 for follow

23

1    up regarding plaintiff's lab tests and chronic stomach pain.  See id.  None of the appeal

2    responses reference an injury to plaintiff's spleen or kidneys, or a need for surgery.  See
     id. at 48-52.

3
     •   In December 2014, plaintiff filed a health care appeal regarding his request for a CT scan
4        in connection with his ongoing stomach pain.  See ECF No. 71 at 27.  The response to
         plaintiff's appeal indicates that plaintiff had a CT scan of his abdomen on February 19,
5        2015 and the results were within normal limits.  See ECF No. 71 at 33, 34.

6                  F.  Discussion

7                      i.  Serious Medical Need

8           While defendant Rogero argues that plaintiff did not have a serious medical need on

9    November 8, 2012, the parties appear to agree that plaintiff was admitted to San Joaquin General

10   Hospital on that date for complaints of severe abdominal pain.  Plaintiff's abdominal pain

11   constitutes a "serious medical need" within the meaning of the Eighth Amendment.  See

12   McGuckin, 974 F.2d at 1059-60.  Accordingly, the court finds that plaintiff did have a serious

13   medical need on November 8, 2012.

14          However, to the extent plaintiff claims that he had a bleeding kidney and a lacerated

15   spleen, this claim is unsupported by the record.[18]  Plaintiff's medical records establish that after

16   plaintiff was admitted to San Joaquin General Hospital on November 8, 2012, a CT scan of

17   plaintiff's abdomen and pelvic area was performed.  Defendant Rogero reviewed plaintiff's CT

18   scan and found that plaintiff's liver, spleen, adrenals, and kidneys were "unremarkable."

19   Defendant Rogero's interpretation of plaintiff's CT scan is supported by the declaration of Dr.

20   Arthur Dublin, who also reviewed plaintiff's November 8, 2012 CT scan.  Dr. Dublin found that

21   the scan was normal, with the exception of a benign 2cm cyst on the left kidney, and that there

22   was no evidence of appendicitis, internal trauma, or a splenic laceration.  Furthermore, while

23   plaintiff's "transfer summary" report indicates that plaintiff had "nonspecific tenderness in the

24   periumbilical and lower abdomen" and that plaintiff had "continued to complain of right upper

25   quadrant and left upper quadrant abdominal pain" during his stay at San Joaquin General

26

27   _____

     [18]  While plaintiff alleges that he also had a genital wart, the undersigned does not address this
28   allegation herein as it does not appear related to plaintiff's claim that he required surgery in
     connection with his abdominal pain.

                                          24

1   Hospital, there is no suggestion in any of plaintiff's medical records that plaintiff's pain was

2   caused by a lacerated spleen or bleeding kidney.[19]

3          The only evidence supporting plaintiff's claim that he had a spleen and kidney injury is

4   plaintiff's allegation that he heard defendant Rogero tell defendants Rodriguez and Singh that

5   plaintiff had a "bleeding right kidney" and a lacerated spleen.  Rogero avers that he never made

6   these statements and never met plaintiff or defendants Rodriguez and Singh.  Even assuming a

7   factual dispute in this regard, however, and assuming Rogero made the disputed statement, that

8   would not establish a triable issue as to whether plaintiff actually had either of these conditions.

9   In the absence of any medical records suggesting an internal injury to plaintiff's kidneys or

10  spleen, a trier of fact could not reasonably conclude based on Rogero's statement to defendant

11  correctional officers Rodriguez and Singh, that plaintiff did in fact have a bleeding kidney and

12  lacerated spleen.  This is particularly so in light of Rogero's finding that plaintiff's kidneys and

13  spleen were "unremarkable" and Dr. Dublin's finding that plaintiff's CT scan was normal.  To the

14  extent plaintiff contends that defendant Rogero altered his report to cover up plaintiff's real

15  injuries, this allegation is purely speculative.  Moreover, Dr. Dublin reviewed plaintiff's original

16  CT scan, not just defendant Rogero's interpretation of the scan, and concluded that the scan

17  presented no evidence of internal trauma.[20]  Accordingly, to the extent plaintiff claims that he had

18  a bleeding kidney and lacerated spleen on November 8, 2012, plaintiff's claim is without merit.

19                          ii.  Deliberate Indifference

20         The court next considers plaintiff's claim that defendant Rogero was deliberately

21  indifferent to plaintiff's serious medical needs when he failed to schedule plaintiff for surgery.

22         Defendant argues that he did not act with deliberate indifference by failing to schedule

23  plaintiff for surgery.  Defendant contends that as a radiologist, he did not treat plaintiff beyond

24  interpreting plaintiff's CT scan, and that in any case, plaintiff did not have a condition warranting

25  [19]  To the extent plaintiff claims that he felt pain in his "left spleen area" and "right kidney area,"
26  plaintiff's lay opinion does not establish that plaintiff's pain was caused by a bleeding kidney or
    lacerated spleen.

27  [20]  While plaintiff speculates that defendant Rogero altered the CT scan image before Dr. Dublin
    reviewed it, there is no evidence to support this allegation.  There is not even evidence to support
28  the notion that Rogero had the ability to alter a patient's actual scan image.

1    surgery.  Defendant's claim that plaintiff did not require surgery on November 8, 2012 is

2    supported by defendant Rogero's finding that plaintiff's liver, spleen, adrenals, and kidneys were

3    unremarkable; the November 9, 2012 discharge report stating that "surgical interventions were

4    deemed unnecessary;" and Dr. Dublin's expert opinion that plaintiff's CT scan presented no

5    evidence of appendicitis, splenic laceration, or internal trauma or injury requiring surgery.  In

6    light of this evidence, the undersigned finds that defendant has met his burden of establishing an

7    absence of evidence supporting plaintiff's claim that plaintiff required surgery on November 8,

8    2012 and that defendant acted with deliberate indifference by failing to schedule plaintiff for

9    surgery.  Accordingly, the burden shifts to plaintiff as the non-moving party "to establish that a

10   genuine issue as to any material fact actually does exist."

11       Plaintiff submitted a number of medical records in support of his claim against defendant

12   Rogero.  The only document that references a potential need for surgery is a report authored by

13   Dr. Samarkandy on November 8, 2012, after plaintiff's CT scan had been completed.  In

14   reference to plaintiff's abdominal pain, Dr. Samarkandy wrote:  "Will observe . . .  patient

15   clinically with serial abdominal exams, follow-up his labs, and if the patient is getting worse will

16   entertain surgical options."  However, the following day, Dr. Mahmoud wrote in a "transfer

17   summary" report that "surgical interventions were deemed unnecessary."  Accordingly, these

18   medical records do not support plaintiff's claim that plaintiff required surgery.

19       Plaintiff also submitted a progress note written by prison physician Dr. Tseng on

20   November 16, 2012, regarding a follow up on plaintiff's November 8, 2012 hospitalization.  Dr.

21   Tseng's report states plaintiff "had labs and a CT scan done [at San Joaquin General Hospital on

22   November 8, 2012], which basically only showed a colon full of stool and constipation."  ECF

23   No. 71 at 18.  Dr. Tseng noted that plaintiff continued to complain of abdominal pain, and that

24   Dr. Tseng suspected that plaintiff had IBS.[21]  While this report supports plaintiff's claim that he

25   continued to suffer abdominal pain upon his return to prison, the report contains no indication that

26   plaintiff's pain warranted surgery.

27

28   [21]  Dr. Tseng appears to be referring to irritable bowel syndrome.

26

1    Plaintiff also submitted copies of health care appeals in which he complains of continued

2    abdominal pain and alleges that he began seeing blood in his urine and/or stool in January 2013.

3    However, in the absence of any evidence suggesting that these symptoms show that plaintiff

4    required surgery, these allegations do not establish a dispute of fact as to whether plaintiff

5    required surgery on November 8, 2012.

6    In short, there is no medical evidence that plaintiff required surgery on November 8, 2012.

7    While plaintiff repeatedly asserts that he heard defendant Rogero tell defendants Rodriguez and

8    Singh that plaintiff needed surgery, plaintiff's alleged need for surgery is wholly unsupported by

9    his medical records.  In the absence of any records suggesting that plaintiff required surgery, and

10   in light of Dr. Dublin's expert opinion that plaintiff did not have internal injuries warranting

11   surgery and Dr. Mahmoud's report indicating that surgical interventions were deemed

12   unnecessary, a trier of fact could not reasonably conclude, based solely on Rogero's alleged

13   statement to defendants Rodriguez and Singh, that plaintiff required surgery.

14   On this record, there is no basis for a trier of fact to conclude that defendant Rogero was

15   deliberately different to plaintiff's serious medical needs when he failed to schedule plaintiff for

16   surgery in connection with his abdominal pain.[22]  Accordingly, defendant's motion for summary

17   judgment should be granted.

18   VII.   Conclusion

19   In accordance with the above, IT IS HEREBY ORDERED that:

20   1.   Plaintiff's objections (ECF Nos. 84 and 87) to defendant Rogero's responses to the

21        court's September 30, 2015 order are overruled;

22   2.   Plaintiff's motion to compel interrogatories from defendant Rodriguez (ECF No. 85)

23        is denied;

24   3.   The Clerk of the Court is directed to provide plaintiff with a new subpoena form,

25        blank but signed by the Clerk of the Court.

26

27   [22]  To the extent plaintiff claims that he required surgery due to a bleeding kidney and lacerated
28   spleen, the court rejects this argument in light of the court's finding that plaintiff did not have a
     bleeding kidney or lacerated spleen on November 8, 2012.

4. Plaintiff's request for a subpoena duces tecum as to San Joaquin General Hospital (ECF No. 44) is granted in part and denied in part.  It is granted to the extent that plaintiff shall be permitted to subpoena from San Joaquin General Hospital (1) any extant security video footage of plaintiff shackled to a hospital bed in San Joaquin General Hospital for two or more days beginning on November 8, 2012; and (2) copies of any hospital rules or memoranda that were in effect in November 2012 governing CDCR prisoners being held at San Joaquin General Hospital during a medical stay.  Discovery shall be reopened for the limited purpose of allowing plaintiff to serve the instant subpoena.  Plaintiff's subpoena form must be returned to the court within thirty (30) days.  Plaintiff's request for a subpoena as to San Joaquin General Hospital is in all other respects denied.

5. Plaintiff's request for a subpoena duces tecum as to Mule Creek State Prison (ECF No. 53) is denied; and

6. Plaintiff's request for a subpoena duces tecum as to Kern Valley State Prison (ECF No. 57) is denied.

IT IS FURTHER RECOMMENDED that:

Defendant Rogero's motion for summary judgment (ECF No. 69) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  Any response to the objections shall be filed and served within 14 days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 31, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

28