1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    EARL D. SMITH,                              No.  2:13-cv-2192 JAM AC P

12              Plaintiff,

13         v.                                     FINDINGS AND RECOMMENDATIONS

14    R. RODRIGUEZ, et al.,

15              Defendants.

16

17         Plaintiff is a state prisoner, currently incarcerated at Kern Valley State Prison, under the

18   authority of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff

19   proceeds in forma pauperis and without counsel in this civil rights action filed pursuant to 42

20   U.S.C. § 1983.  This action proceeds against three defendants on the following claims: Dr. Grant

21   Rogero, for deliberate indifference to plaintiff's serious medical needs in violation of the Eighth

22   Amendment; correctional officer R. Rodriguez, for deliberate indifference to plaintiff's serious

23   medical needs and for retaliation in violation of the First Amendment; and correctional officer H.

24   Singh for failure to protect plaintiff in violation of the Eighth Amendment.  This order addresses

25   defendant Rodriguez and Singh's motion for summary judgment.

26         I.      Factual and Procedural Background

27              A.  Plaintiff's  Complaint

28         Plaintiff's complaint alleges that on November 8, 2012, plaintiff experienced excruciating

1

abdominal pain and was rushed from Mule Creek State Prison to an outside hospital where a "c-scan x-ray" was taken.  ECF No. 1 at 7.  After the CT scan was taken, defendant correctional officers Singh and Rodriguez took plaintiff to a holding cell near defendant Rogero's[1] office.  From the holding cell, plaintiff overheard defendant Dr. Rogero tell Singh and Rodriguez that plaintiff had a lacerated spleen, a bleeding right kidney, and genital warts and should be scheduled for surgery immediately.  Id. at 8.  Rodriguez told Dr. Rogero that plaintiff was a snitch who had a civil lawsuit pending against several correctional officers, and asked Dr. Rogero to schedule plaintiff's surgery in April so that plaintiff would not be able to go to trial.  Id. at 9.  Singh said to Rodriguez, "Don't do this."  Dr. Rogero thereafter proposed another surgery date and Rodriguez again called plaintiff a snitch and made reference to plaintiff's pending lawsuit.  Plaintiff remained in the hospital for three days and was returned to prison without obtaining a scheduled surgery date.[2]

### B. Prior Motions for Summary Judgment

Defendant correctional officer Singh and defendant radiologist Dr. Rogero previously filed separate motions for summary judgment in the instant case.[3]

Defendant Singh's motion for summary judgment was filed on February 18, 2015.  ECF No. 49.  In his motion, defendant Singh asserted that he was not present at San Joaquin General Hospital on November 8, 2012, and therefore could not have been deliberately indifferent to plaintiff's health and safety on that date, as alleged in the complaint.  Id.  Plaintiff filed an opposition, asserting that defendant Singh was present at San Joaquin General Hospital on the date of the alleged incident.  ECF No. 55.  On August 25, 2015, the undersigned issued findings and recommendations recommending that defendant Singh's motion for summary judgment be denied.  ECF No. 72.  Specifically, the undersigned found that summary judgment was

---

[1]  Although plaintiff refers to Dr. Rogero as "Delgados" through a good portion of his complaint, in the Answer filed by this defendant, he is identified as Dr. Grant Rogero.  See ECF No. 27.  The court will use the name of Rogero to identify this individual.

[2]  A more detailed summary of plaintiff's allegations is set forth in this court's order filed December 23, 2014.  See ECF No. 36 at 2-4.

[3]  Defendants Singh and Rodriguez are represented by the Office of the Attorney General.  Defendant Rogero is represented by private counsel.

1    unwarranted because a dispute of fact existed as to whether defendant Singh was present at SJGH

2    on November 8, 2012.  Id. at 13.  These findings and recommendations were adopted in full by

3    the district judge on December 9, 2015.  ECF No. 88.

4              Defendant Dr. Rogero's motion for summary judgment was filed on June 25, 2015.  ECF

5    No. 69.  Defendant Rogero argued that he was entitled to summary judgment on plaintiff's

6    deliberate indifference claim because plaintiff did not have a serious medical need when he was

7    admitted to San Joaquin General Hospital on November 8, 2012.  Plaintiff opposed the motion,

8    maintaining that defendant Rogero acted with deliberate indifference by failing to schedule

9    plaintiff for surgery after Rogero determined that plaintiff had a bleeding kidney and lacerated

10   spleen.  ECF Nos. 70, 71.  On March 31, 2016, the undersigned issued findings and

11   recommendations recommending that defendant Rogero's motion for summary judgment be

12   granted.  ECF No. 89.  Specifically, the undersigned found that while plaintiff's abdominal pain

13   qualified as a serious medical need, there was no evidence that plaintiff had a bleeding kidney,

14   lacerated spleen, or other condition that required surgery on November 8, 2012 or at any time

15   thereafter.  Accordingly, the undersigned found that defendant Rogero's failure to schedule

16   plaintiff for surgery did not amount to deliberate indifference, and defendant Rogero was entitled

17   to summary judgment on that claim.[4]

18            The instant motion for summary judgment was filed by defendants Rodriguez and Singh

19   on September 18, 2015.  ECF No. 76.  Plaintiff filed an opposition, ECF No. 81, and defendants

20   filed a reply, ECF No. 82.  Plaintiff thereafter filed "objections" to the reply.  ECF No. 83.

21        II.     Legal Standards for Motions for Summary Judgment

22            Summary judgment is appropriate when the moving party "shows that there is no genuine

23   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

24   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

25   proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

26   v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

27

28   _____
     [4]  These findings and recommendations are pending before the district judge.

1    (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

2    this by "citing to particular parts of materials in the record, including depositions, documents,

3    electronically stored information, affidavits or declarations, stipulations (including those made for

4    purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

5    that such materials "do not establish the absence or presence of a genuine dispute, or that the

6    adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56

7    (c)(1)(A), (B).

8         When the non-moving party bears the burden of proof at trial, "the moving party need

9    only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

10   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

11   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

12   against a party who fails to make a showing sufficient to establish the existence of an element

13   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

14   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

15   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

16   circumstance, summary judgment should be granted, "so long as whatever is before the district

17   court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

18        If the moving party meets its initial responsibility, the burden then shifts to the opposing

19   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

20   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

21   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

22   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

23   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

24   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] [p]laintiff's verified complaint

25   may be considered as an affidavit in opposition to summary judgment if it is based on personal

26   knowledge and sets forth specific facts admissible in evidence."[5]  Lopez v. Smith, 203 F.3d 1122,

27

28   _____
     [5]  Plaintiff filed a verified complaint in this case.  ECF No. 1.

                                        4

1  1132 n.14 (9th Cir. 2000) (en banc).

2         The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

3  might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

4  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

5  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

6  reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

7  Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8         In the endeavor to establish the existence of a factual dispute, the opposing party need not

9  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

10  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

11  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

12  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

13  Matsushita, 475 U .S. at 587 (citations omitted).

14         In evaluating the evidence to determine whether there is a genuine issue of fact," the court

15  draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

16  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

17  It is the opposing party's obligation to produce a factual predicate from which the inference may

18  be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

19  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

20  party "must do more than simply show that there is some metaphysical doubt as to the material

21  facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

22  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

23  omitted).

24         In applying these rules, district courts must "construe liberally motion papers and

25  pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

26  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

27  support an assertion of fact or fails to properly address another party's assertion of fact, as

28  ////

5

1    required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion

2    . . . ." Fed. R. Civ. P. 56(e)(2).

3              III.    Arguments of the Parties

4                     A.    Defendants' Argument

5          Defendants Rodriguez and Singh assert that summary judgment is warranted on plaintiff's

6    Eighth Amendment deliberate indifference claim as well as his First Amendment retaliation

7    claim.  ECF No. 76-1.  With respect to the Eighth Amendment claim, defendants assert that they

8    did not act with deliberate indifference; that plaintiff has no evidence that he was deprived of

9    necessary medical care or that he required surgery; and that plaintiff's assertion that he required

10   surgery is blatantly contradicted by the record.  Id. at 9-10.  In support of their argument,

11   defendants submit a number of plaintiff's medical records as well as the declaration of Dr. Smith,

12   the Chief Physician and Surgeon at San Joaquin General Hospital.  See ECF No. 76-3.

13         As to plaintiff's retaliation claim, defendants assert that summary judgment is warranted

14   because the undisputed facts show that surgery was never necessary and that Rodriguez's alleged

15   actions did not deprive plaintiff of any necessary medical care.  ECF No. 76-1 at 6-7.  Defendants

16   further assert that plaintiff cannot show that his speech was chilled, as plaintiff's ability to litigate

17   his case which was scheduled to go to trial in April 2013[6] was unaffected by Rodriguez's actions.

18   Thus, defendants contend that plaintiff's retaliation claim fails as a matter of law.  Id. at 7.

19                     B.    Plaintiff's Argument

20         Plaintiff filed an opposition to defendant's motion for summary judgment, ECF No. 81 at

21   1-14, as well as a statement of disputed facts, id. at 15-29.  Plaintiff also filed a declaration and

22   his own statement of undisputed facts.  See ECF No. 83.

23         It is well-established that the pleadings of pro se litigants are held to "less stringent

24   standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

25   (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

26   govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on another

27

28   _____
     [6]  The case defendants refer to is Smith v. Priolo, Case No. 2:09-cv-00654 JAM EFB (E.D. Cal.).

                                          6

1   ground by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the

2   unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

3   subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as "limited

4   access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

5   1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

6   "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

7       The court is mindful of the Ninth Circuit's more overarching caution in this context, as

8   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

9   pro se inmates and . . . avoid applying summary judgment rules strictly."  Ponder, 611 F.3d

10  at 1150.  Accordingly, the court considers the record before it in its entirety despite plaintiff's

11  failure to be in strict compliance with the applicable rules.  However, only those assertions in the

12  opposition which have evidentiary support will be considered.

13      In his opposition, plaintiff essentially repeats the allegations set forth in his complaint.

14  Plaintiff maintains that he heard defendant Dr. Rogero tell defendants Rodriguez and Singh that

15  plaintiff had a lacerated spleen, a bleeding right kidney, and a genital wart, and that plaintiff

16  needed to be scheduled for surgery.  Plaintiff asserts that the court should credit his version of the

17  facts because he has direct knowledge of whether he overheard defendant Rodriguez call plaintiff

18  a snitch and attempt to interfere with plaintiff's surgery date, while defendant Singh did nothing

19  to intervene.  Plaintiff speculates that the reason his medical records do not reflect a need for

20  surgery is because medical staff at both the prison and San Joaquin General Hospital are aware of

21  the instant lawsuit and are covering up defendants' wrongdoing.  Plaintiff maintains that he

22  requires surgery and that defendants are responsible for the fact that plaintiff has not yet obtained

23  surgery for his bleeding kidney and lacerated spleen.

24      Plaintiff also objects to defendant Singh joining in the instant motion for summary

25  judgment.  Plaintiff asserts that defendant Singh already filed a motion for summary judgment,

26  which the court denied, and that Singh should therefore not be permitted to join in defendant

27  Rodriguez's motion for summary judgment.

28      To the extent plaintiff asserts that the court should not re-consider the arguments

7

1    previously raised in Singh's prior motion for summary judgment, ECF No. 49, the court agrees.

2    The court has already considered, and rejected, defendant Singh's argument that he is entitled to

3    summary judgment based on his allegation that he was not present at San Joaquin Hospital on

4    November 8, 2012.  To the extent Singh makes this same argument in the instant motion, the

5    court will not consider it again.  However, nothing prevents defendant Singh from timely moving

6    for summary judgment on other grounds.  Accordingly, the court will consider defendant Singh's

7    argument that he is entitled to summary judgment on plaintiff's Eighth Amendment claim

8    because he did not act with deliberate indifference to plaintiff's health and safety.

9          IV.    Undisputed Facts[7]

10   • Plaintiff is an inmate in the custody of the California Department of Corrections and
       Rehabilitation.  At all times relevant, plaintiff was incarcerated at Mule Creek State
11     Prison.  Defendants' Statement of Undisputed Facts ("DSUF") ¶ 1.

12
13   • In November 2012, defendant Rodriguez was employed at Mule Creek State Prison
       ("MCSP") as a correctional officer in the Central Health Building Specialty Clinic, where
14     his usual assignment was to provide security at the prison specialty clinic during medical
       evaluations.[8]  Defendant Rodriguez would sometimes provide security for inmates who
15     were transported outside of the prison for medical appointments.  DSUF ¶ 2.

16     November 8, 2012 Events

17   • On November 8, 2012, defendant Rodriguez and another officer[9] drove plaintiff from
       Mule Creek State Prison to San Joaquin General Hospital ("SJGH") after plaintiff was
18     seen in the Mule Creek Treatment Center for complaints of severe abdominal pain.  ECF
       No. 1 at 7; Rodriguez Declr. ¶ 10.
19

20   • Defendant Rodriguez provided custody coverage for plaintiff by escorting and guarding
       plaintiff during the car ride and at all times until plaintiff was admitted to the hospital.
21     DSUF ¶ 3.

22   ////

23

24   [7]  Much of the evidence submitted in support of defendant Singh and Rodriguez's motion for
     summary judgment was also submitted in support of defendant Rogero's separate motion for
25   summary judgment, which the court has already addressed.  For the sake of internal consistency,
     the court again summarizes the relevant evidence herein, despite the repetitive nature of the
26   exercise.
     [8]  Defendant Rodriguez is currently retired.  Rodriguez Declr. ¶ 1.
27   [9]  Defendant Rodriguez does not identify the other officer.  Plaintiff contends that the other
28   officer was defendant Singh.

- Upon arrival at SJGH, defendant Rodriguez checked plaintiff in at the custody triage area, and then took plaintiff to the CT scan area, located adjacent to the Emergency Room (ER). Rodriguez Declr. ¶ 12.

- During this time, plaintiff was in waist and leg restraints, and was transported in a wheelchair.  See Rodriguez Declr. ¶¶ 10-12.

- Defendant Rodriguez removed plaintiff's restraints and assisted in moving plaintiff from the wheelchair to the exam table for his CT scan.[10]  DSUF ¶ 12, Rodriguez Declr. ¶ 12.

- After plaintiff's CT scan was finished, defendant Rodriguez took plaintiff to an examining room in the custody triage center.  Defendant Rodriguez declares that he guarded plaintiff in the examining room while medical staff spoke with plaintiff.  Rodriguez Declr. ¶¶ 13-14.

- Medical staff told Rodriguez that plaintiff was to be admitted to the hospital and moved to a room on the custody floor of the hospital.[11]  Rodriguez Declr. ¶¶ 14-17.

- Rodriguez asked this staff person whether plaintiff would be returning to MCSP that same day.  The staff person confirmed that plaintiff was to be admitted to the hospital and would not be returning to MSCP that day.  Rodriguez Declr. ¶ 15.

- According to Rodriguez, the reason he asked about plaintiff's return was because Rodriguez had been instructed before he left MCSP to find out whether plaintiff would be returning to MCSP that same day.  Specifically, Rodriguez declares that before he left MCSP, he spoke on the phone with a staff person from the Investigative Services Unit, who instructed Rodriguez to ask the hospital whether plaintiff could return to prison.  Rodriguez Declr. ¶ 8.  If the doctor determined that plaintiff could not return to MSCP that day, Rodriguez was to convey that information to the ISU investigator.  It was Rodriguez's understanding that the ISU investigator was working on a pending administrative appeal that needed to be resolved that week.  However, Rodriguez does not recall whether the appeal was related to plaintiff, or whether plaintiff was called as a witness in another inmate's disciplinary hearing, or some other issue.[12]  Id.

- After medical staff informed Rodriguez that plaintiff was to be admitted to the hospital, Rodriguez took plaintiff in the elevator to the custody floor and checked him in with the custody staff assigned to the hospital.  Id. ¶ 18.

---

[10]  Defendant Rodriguez declares that per standard procedure, "the other officer" would have guarded plaintiff while Rodriguez removed the restraints.  Rodriguez Declr. ¶ 12.  Although defendant Rodriguez never identifies the officer who drove him to SJGH, it is reasonable to infer based on Rodriguez's description of "standard procedure" that one officer remained with Rodriguez once they arrived at the hospital.

[11]  The custody floor of the hospital is dedicated to housing inmate-patients.  Rodriguez Declr. ¶¶ 14-17.

[12]  Plaintiff appears to assert that he did not have an appeal pending at this time.

- Rodriguez declares that he did not ask any doctor at MCSP or at SJGH about plaintiff's medical condition.  Rodriguez Declr. ¶ 8.

- Rodriguez returned to MCSCP that day and reported to the ISU investigator that plaintiff had been admitted to the hospital.  Rodriguez Declr. ¶ 18.

- Rodriguez declares that he had no knowledge of plaintiff's medical condition, including whether plaintiff needed surgery, and had no authority or control over plaintiff's medical care or whether plaintiff received surgery.  Rodriguez further declares that he was not aware of plaintiff's litigation activities, did not call plaintiff a "snitch," and was not aware that plaintiff was scheduled to go to a civil trial in April 2013.  Rodriguez Declr. ¶¶ 9, 19.

Plaintiff's Verified Allegations

- According to plaintiff, both defendant Singh and defendant Rodriguez took plaintiff to get a CT scan at SJGH on November 8, 2012.  ECF No. 1 at 7.

- According to plaintiff, SJGH technician Linda Hodges gave plaintiff's CT scan results to defendant Rodriguez.[13]

- Defendants Singh and Rodriguez then wheeled plaintiff to a room outside defendant Rogero's office.  Id.

- Defendants Singh and Rodriguez took plaintiff's scan into Dr. Rogero's office to be read., while plaintiff remained in a holding cell approximately five feet away.  Id. at 8.

- Less than ten minutes later, plaintiff heard Dr. Rogero come out of his office and start explaining to Rodriguez and Singh what was wrong with plaintiff.  Specifically, Dr. Rogero said that plaintiff had a lacerated spleen, a bleeding right kidney, and a genital wart.  Id. at 8.

- Dr. Rogero said that plaintiff "shouldn't be like this" and that he was "scheduling [plaintiff] for surgery right then."  Id. at 8.

- Dr. Rogero went back into his office to schedule plaintiff's surgery date.  Id. at 8.

- Approximately two minutes later, Dr. Rogero walked out of his office and told defendants Singh and Rodriguez plaintiff's surgery date.  Id. at 8.

- Plaintiff heard Rodriguez say, "That's too soon."  Id. at 8.

- Dr. Rogero said, "If this guy doesn't get surgery he could die."  Id.

- Rodriguez responded, "The reason [plaintiff] is like this is because he is a snitch."  Id. at 8-9.

---

[13] Plaintiff appears to assert that Hodges physically handed Rodriguez a copy of the x-ray. Defendants assert that the x-ray results are transmitted electronically.

- Rodriguez then told Dr. Rogero that plaintiff has a pending civil lawsuit against some correctional officers that will go to trial in April.[14]

- Rodriguez asked Dr. Rogero to schedule plaintiff's surgery date sometime in April so that plaintiff would be unable to go to trial. Id. at 9.

- Dr. Rogero went back in to his office. Id.

- Defendant Singh said to defendant Rodriguez, "Don't do this." Id. at 9.

- Dr. Rogero returned with another surgery date and defendant Rodriguez again said that plaintiff had a pending civil lawsuit against CDCR officers. Id. at 12. Defendant Singh did not respond.

- Plaintiff called out to defendants Rodriguez and Singh and asked what the doctor said. Id. at 10. Rodriguez responded, "No, he didn't tell me nothin.'" Id. Plaintiff stated that as a patient, plaintiff has a right to know what is wrong with him. Id.

- Approximately twenty minutes later, Singh and Rodriguez retrieved plaintiff from the holding cell. Id. at 10. Plaintiff remained shackled to the wheelchair in excruciating pain. Plaintiff asked Rodriguez what the doctor said and Rodriguez responded that he did not know.

- Plaintiff asked Rodriguez why they were going near the elevator and Rodriguez said, "Oh, the doctor said you are staying overnight in the hospital to see what is wrong with you." Id. at 10-11. Plaintiff was then taken to a room on a different floor and shackled to a hospital bed in excruciating pain.[15] Id. at 11.

- Twenty minutes thereafter, Dr. Rogero returned and examined plaintiff. Plaintiff indicated that the pain was in the "left spleen area" and the "right kidney area." Id. at 13.

- Dr. Rogero started to examine plaintiff, pushing on the left side as plaintiff yelled out in pain. Id. Rogero then pressed on plaintiff's right kidney area and plaintiff again yelled out in pain. Id.

- Dr. Rogero left and a nurse returned to take blood and urine samples from plaintiff. Plaintiff explained that he was in excruciating pain. Five minutes later, the nurse returned with pain medication.

- According to plaintiff, plaintiff remained in the hospital for two additional days.[16]

---

[14] Smith v. Priolo, Case No. 2:09-cv-00654 JAM EFB (E.D. Cal.).

[15] As the complaint contains no additional allegations regarding defendants Rodriguez and Singh, it appears that this was the last interaction defendants had with plaintiff at SJGH on November 8, 2012.

[16] Defendants contend that plaintiff was discharged the following day, on November 9, 2012.

- On the second day, plaintiff spoke with Dr. Rogero and informed Rogero that he was still in pain.  Rogero told plaintiff that he could not eat because he needed surgery.

- On the third day, plaintiff alleges that Dr. Rogero returned with a surgeon.  Dr. Rogero explained to the surgeon where plaintiff's pain was.

- Later that day, correctional officers entered plaintiff's room and told plaintiff that Dr. Rogero had signed a release for plaintiff to return to prison.  Id. at 14-15.

- Plaintiff told the officers he was still in pain, and the officers said that plaintiff still had to return to prison.  Id.  Plaintiff alleges that he returned to prison that day.  Id.

- Plaintiff was discharged from the hospital without being scheduled for surgery.  See ECF No. 69-7 at 13; ECF No. 1 at 15.

- Plaintiff has not had any surgeries since November 8, 2012, and no doctor has informed plaintiff that he requires surgery since that date.  ECF No. 69-7 at 32 (Plaintiff's Deposition).

Plaintiff's Medical Records

Plaintiff's medical records reflect the following:

- On November 8, 2012, plaintiff was seen in the medical clinic at MCSP for complaints of abdominal pain that was getting progressively more severe.  The interdisciplinary progress note indicates that plaintiff was to be transferred to the SJGH ER via state auto for evaluation of his abdominal pain and to rule out early appendicitis.

- On November 8, 2012, plaintiff had a CT scan of his abdomen and pelvis at San Joaquin General Hospital, which was taken by technician Linda Hodges, and reviewed by defendant radiologist Dr. Rogero.

- Defendant Rogero's report indicated that plaintiff's "[l]iver, spleen, adrenals and kidneys [were] unremarkable."  There was considerable stool throughout the colon, and the appendix was never identified.

- Also on November 8, 2012, a SJGH "History & Physical" report was prepared by Dr. Tarig Samarkandy.  The report notes that plaintiff's CT scan showed a large amount of stool throughout the colon, and the appendix was not identified.  The report indicates plaintiff had "nonspecific abdominal pain of unknown etiology," that exams and labs would be taken, and "if the patient is getting worse will entertain surgical options."

- On November 9, 2012, a SJGH "Transfer Summary" report was prepared and signed by Hazel-Kay Yurong, NP and Dr. Ahmed Mahmoud.  The report indicates that plaintiff was admitted to SJGH on November 8, 2012 and transferred on November 9, 2012.[17]  The

---

[17]  Plaintiff disputes that he was discharged on November 9, 2012.  According to plaintiff, he stayed in the hospital for three days and was not discharged until November 11, 2012.

report further indicates that during hospitalization, plaintiff continued to complain of right upper quadrant and left upper quadrant abdominal pain. The report concludes, in relevant part, that "surgical interventions were deemed unnecessary" and that plaintiff was in "safe and stable condition for discharge."

- The SJGH discharge form indicates that plaintiff was discharged from SJGH on November 9, 2012.  Dr. Rudas is listed as the "accepting physician" at MCSP.

- The MCSP "Medical Return Progress Note" indicates that plaintiff returned to MCSP from SJGH on November 9, 2012.

- On November 9, 2012, Dr. Rudas ordered a colonoscopy for plaintiff, to be performed on November 14, 2012.

- On November 16, 2012, plaintiff was seen by his primary care provider, Dr. Tseng.  The report indicates that plaintiff's November 8, 2012 CT scan was normal and showed that plaintiff's colon was full of stool and constipation.  Dr. Tseng noted that plaintiff had stopped taking all of his medications except for iron sulfate, and continued to complain of pain after he returned from SJGH.  The report also notes plaintiff's history of extremely mild microcytic anemia since 2008, with no change over the past 4 years.  Dr. Tseng postulated that plaintiff had irritable bowel syndrome or possibly hyponatremia (low level of sodium in the blood), which was likely a side effect of his Tegretol medication.  Dr. Tseng discontinued plaintiff's Tegretol and H. Pylori medications, and scheduled a follow up visit in 3 weeks.

- On November 27, 2012, plaintiff had a follow up visit with Dr. Soltanian-Zadeh for his anemia.  The progress note indicates that plaintiff's November 14, 2012 colonoscopy showed mild chronic gastritis and moderate chronic colitis, but was otherwise unremarkable.  The note states that plaintiff would be started on medication for chronic gastritis and fiber for constipation, and that plaintiff's chronic abdominal pain was likely due to his chronic gastritis and constipation; plaintiff will be monitored to see if his abdominal pain improves.  The note describes plaintiff's recent CT scan, EGD, and colonoscopy as unremarkable and negative for infection, cancer, or other diseases.  The report also notes plaintiff's history of microcytic anemia, but indicates that plaintiff is currently asymptomatic.  Plaintiff will be monitored and taken off iron supplements to avoid worsening of his chronic gastritis or constipation.  A 45-day follow up was ordered.

- On December 14, 2012, plaintiff had a consultation for anemia and mild leukopenia with Dr. Gill at SJGH.  The report states that plaintiff's past colonoscopies, EGD, and CT scans were normal, and notes plaintiff's complaints of abdominal pain during the previous two months.  Dr. Gill found that plaintiff's microcytic anemia was mild, that plaintiff may have neutropenia, and that plaintiff's right lower quadrant pain was of an unknown etiology.  Dr. Gill recommended continued observation and follow up with hematology oncology as needed.

- On December 28, 2012, plaintiff had a follow up visit with Dr. Tseng.  Dr. Tseng noted that plaintiff continued to complain of abdominal pain, localized to the right upper quadrant and only after he eats meals.  The report indicates plaintiff's abdominal pain is of

13

"varying symptomology." The report postulates that the symptoms are due to irritable bowel syndrome, but a right upper quadrant ultrasound (RUQ US) would be pursued in case the past CT scan did not properly visualize the gall bladder. If the RUQ US is normal, then the diagnosis "is more certain to be functional abd pain (IBS)."

- On January 30, 2013, plaintiff had a right upper quadrant ultrasound. The results were unremarkable.

- On February 12, 2013, plaintiff was seen for his chronic right upper quadrant pain. The work up was unremarkable. The diagnosis was possible irritable bowel syndrome. The report noted that plaintiff's subjective complaints did not match the objective findings. Plaintiff's blood tests revealed a low sodium count, and plaintiff admitted to drinking more than one gallon of water daily. Plaintiff was cautioned to continue taking Prisolec, Colace, and fiber tablets, and to avoid over-hydration and non-steroidal anti-inflammatories. Additional stool tests were ordered for further evaluation. Plaintiff was ordered to follow up in 5 to 6 weeks.

- Plaintiff had another follow up appointment March 29, 2013. He continued to complain of stomach pain, and reported that when he urinates he gets a sensation of urine and blood going down his right lower extremity to his toes. The report indicates that plaintiff reported no other symptoms. His March 20, 2013 labs showed negative fecal occult blood test results, unremarkable urinalysis, improved hemoglobin, low serum glucose, and normalized sodium. Additional tests for H. pylori and bloodwork were ordered for further evaluation and follow up. The report also notes that psychiatric evaluation was encouraged, but plaintiff declined.

- On August 2, 2013, plaintiff had a follow up visit and reported abdominal cramping for the past 11-12 months. Plaintiff reported that he believed the pain was a result of something someone put in his food. Plaintiff's labs and vitals were taken. The report notes plaintiff's unremarkable workups earlier in the year (gallbladder ultrasound, abdominal CT, and colonoscopy). The report states that plaintiff appeared overall stable but that a trial of dicyclomine would be started to see if it relieved plaintiff's symptoms.

- On November 5, 2014, plaintiff had a telemedicine consult with Dr. Wilkinson. Dr. Wilkinson noted plaintiff's history of deteriorating blood counts with mild anemia, moderate leukopenia, and normal platelet count. Dr. Wilkinson's report notes plaintiff's complaints of bilateral flank pain, worse when sitting up, for the past 2 years with some associated fevers, chills, and sweats. Dr. Wilkinson wrote, "I am puzzled by this complaint and have no obvious etiology." Dr. Wilkinson suggested a CT scan of the abdomen and pelvis with oral and intravenous contrast, and a follow up visit after the scan.

- On December 22, 2014, plaintiff had a chest x-ray taken related to leukopenia. The results showed the cardiomediastinal silhouette was within normal limits, and the lungs were clear. No acute disease was apparent.

- On February 19, 2015, plaintiff had a CT scan of the abdomen and pelvis without contrast. The visualized heart and pericardium were clear, and the lung bases clear. The liver,

14

gallbladder, spleen, pancreas, and adrenal glands appeared normal.  The kidneys were normal in size and enhanced symmetrically, with no hydronephrosis or renal calculi.  The urinary bladder appeared unremarkable.  The exam impression showed negative results for abnormalities.

- On April 6, 2015, plaintiff received a telemedicine follow up consult with Dr. Wilkinson.  The report describes plaintiff as a patient with multiple problems.  Dr. Wilkinson opined that plaintiff's neutropenia and leukopenia were due to benign ethnic neutropenia of African Americans.  Dr. Wilkinson noted plaintiff's bilateral flank pain, which he still found "somewhat confusing."  Dr. Wilkinson noted that plaintiff's last CT scan of the abdomen and pelvis was normal, which was "reassuring."  Dr. Wilkinson recommended an MRI scan of the thoracic spine to rule out herniated disk or other paraspinous pathology.

- Dr. Christopher J. Smith, the Chief Physician and Surgeon at Mule Creek State Prison, reviewed plaintiff's medical file and health care requests as part of the instant litigation.  Dr. Smith declares, based on his review of plaintiff's medical records, and his medical training, judgment, and experience, that it is his opinion that plaintiff received all reasonable and necessary medical care for his various complaints.  Dr. Smith further declares that surgery was not deemed necessary at any time, nor was any abnormality noted in plaintiff's kidneys, spleen, liver or adrenals.

V.      Eighth Amendment Deliberate Indifference/Failure to Protect Claims

A.  Legal Standards

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

15

1   indifferent.  This second prong ... is satisfied by showing (a) a purposeful act or failure to respond

2   to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett v.

3   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks

4   omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR,

5   726 F.3d 1062, 1081 (9th Cir. 2013).

6        To state a claim for deliberate indifference to serious medical needs, a prisoner must

7   allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or

8   safety; the official must both be aware of the facts from which the inference could be drawn that a

9   substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan,

10   511 U.S. 825, 837 (1994).

11        More narrowly, a "failure to protect" claim under the Eighth Amendment requires a

12   showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety."

13   Farmer, 511 U.S. at 837.  Under an Eighth Amendment failure to protect claim, "[w]hether a

14   prison official had the requisite knowledge of a substantial risk is a question of fact subject to

15   demonstration in the usual ways, including inference from circumstantial evidence, . . . and a

16   factfinder may conclude that a prison official knew of a substantial risk from the very fact that the

17   risk was obvious."  Farmer, 511 U.S. at 842 (citations omitted).  The duty to protect a prisoner

18   from serious harm requires that prison officials take reasonable measures to guarantee the safety

19   and well-being of the prisoner.  Id. at 832–33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th

20   Cir.1998).  Because "only the unnecessary and wanton infliction of pain implicates the Eighth

21   Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state

22   of mind."  Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and

23   citations omitted).

24        B.  Analysis

25        Defendants contend that they are entitled to summary judgment on plaintiff's Eighth

26   Amendment claims because plaintiff did not have a serious medical need for surgery on

27   November 8, 2012, and the record demonstrates that plaintiff was provided with all appropriate

28   and necessary medical care with respect to his complaints of abdominal pain.  See ECF No. 76-1.

16

1   Much of the evidence relevant to plaintiff's deliberate indifference claims against defendants

2   Rodriguez and Singh was considered by the court and discussed in the March 31, 2016 Findings

3   and Recommendations addressing defendant Rogero's motion for summary judgment on the same

4   grounds, ECF No. 89.  For the reasons set forth in the March 31, 2016 Findings and

5   Recommendations, ECF No. 89 (hereafter, "F&Rs"), and for the additional reasons discussed

6   below, the undersigned finds that plaintiff's evidence does not create a triable issue of fact

7   regarding the existence of a serious medical need for surgery on November 8, 2012, or at any

8   time thereafter.  Accordingly, plaintiff's Eighth Amendment claims fail as a matter of law.

9        First, to the extent plaintiff contends that he had a bleeding kidney or lacerated spleen on

10   November 8, 2012, plaintiff's claim is supported only by his verified allegation that he heard

11   defendant Dr. Rogero tell defendants Rodriguez and Singh that plaintiff had a bleeding kidney

12   and lacerated spleen.  As explained in the F&Rs, none of plaintiff's medical records from SJGH

13   suggest that plaintiff had a bleeding kidney or lacerated spleen.  Nor do the additional prison

14   medical records provided by defendants in connection with the instant motion suggest that

15   plaintiff was ever determined to have a problem with his kidneys or spleen.  Plaintiff's medical

16   records, together with Dr. Smith's declaration, establish a complete absence of evidence that

17   plaintiff had a bleeding kidney or lacerated spleen.  Accordingly, to the extent plaintiff claims that

18   he required surgery for his bleeding kidney and lacerated spleen, this contention is completely

19   unsupported by the record.

20        Second, as discussed in the F&Rs, plaintiff's medical records from SJGH establish that

21   the treating physicians at SJGH determined that surgical interventions were unnecessary for

22   plaintiff.  Although the SJGH medical records did not explicitly state why surgical options might

23   have been considered in the first instance, the prison medical records supplied by defendants in

24   the instant motion clarify this point: after plaintiff complained of severe abdominal pain, he was

25   rushed to SJGH on November 8, 2012 to rule out early appendicitis.  As there is no evidence that

26   SJGH medical staff, or prison medical staff, determined that plaintiff's abdominal pain was

27   actually caused by appendicitis, there is no argument that plaintiff should have received surgery

28   on this basis either.

17

1    Finally, it is clear from plaintiff's prison medical records that plaintiff continued to suffer

2    from abdominal pain when he returned to prison after his stay at SJGH, and that this pain

3    continued for several years.  However, plaintiff's medical records demonstrate that prison

4    medical staff continued to run tests, provide plaintiff with medications, and generally attempted to

5    discover the cause of plaintiff's ongoing abdominal pain.  The fact that medical staff have not

6    been able to identify the cause of plaintiff's abdominal pain is certainly unfortunate.  However,

7    their inability to determine the cause of plaintiff's pain does not establish that plaintiff is not

8    receiving appropriate medical care, much less that any doctor has acted with deliberate

9    indifference to plaintiff's serious medical needs.

10    With respect to plaintiff's specific claims against defendant correctional officers Singh

11    and Rodriguez, the above evidence compels the conclusion that plaintiff's claims fail as a matter

12    of law.  Plaintiff's Eighth Amendment claims are premised on the contention that he had a

13    medical need for surgery: plaintiff claims that Rodriguez acted with deliberate indifference to

14    plaintiff's serious medical need for surgery when he interfered with plaintiff's surgery date, and

15    that defendant Singh acted with deliberate indifference to that same need when he failed to stop

16    Rodriguez from interfering with plaintiff's surgery date.  Because there is no evidence that

17    plaintiff needed surgery, or was going to receive surgery, defendants could not have acted with

18    deliberate indifference to plaintiff's need for surgery.  And plaintiff suffered no harm as a result

19    of defendants' actions, because plaintiff was never going to receive surgery in the first instance.

20    Furthermore, to the extent plaintiff asserts that his medical records have been altered by prison

21    staff to create the appearance that plaintiff does not require surgery, plaintiff's speculative

22    allegations are insufficient to defeat defendants' motion for summary judgment.

23    On this record, no reasonable jury could conclude that plaintiff had a medical need for

24    surgery on November 8, 2012, or that defendant Singh and Rodriguez acted with deliberate

25    indifference to plaintiff's alleged medical need for surgery.  Accordingly, defendants Singh and

26    Rodriguez should be granted summary judgment on this claim.

27    ////

28    ////

18

1        VI.      First Amendment Retaliation Claim

2                 A.  Legal Standards

3        "Within the prison context, a viable claim of First Amendment retaliation entails five

4   basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

5   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

6   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

7   correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations

8   omitted); accord, Watison v. Carter, 668 F.3d 1108, 114-15 (9th Cir. 2012).  "[A] plaintiff who

9   fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as

10  a retaliatory adverse action.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing

11  Rhodes, 408 F.3d at 568, n.11.

12       Filing administrative grievances and pursuing civil rights litigation are protected activities,

13  and it is impermissible for prison officials to retaliate against prisoners for engaging in these

14  activities.  Rhodes, 408 F.3d at 567-68; see also Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th

15  Cir. 2011) (prisoners retain First Amendment rights not inconsistent with their prisoner status or

16  penological objectives, including the right to file inmate appeals and the right to pursue civil

17  rights litigation).

18       Plaintiff need not prove that the alleged retaliatory action, in itself, violated a

19  constitutional right.  Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim,

20  plaintiff need not "establish an independent constitutional interest" was violated); see also Hines

21  v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on

22  filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (transfer of prisoner

23  to a different prison constituted adverse action for purposes of retaliation claim).  Rather, the

24  interest asserted in a retaliation claim is the right to be free of conditions that would not have been

25  imposed but for the alleged retaliatory motive.

26                B.  Analysis

27       Defendants assert that summary judgment is warranted on plaintiff's retaliation claim

28  against defendant Rodriguez because plaintiff cannot show that defendant's actions chilled the

19

1   exercise of plaintiff's First Amendment rights, as plaintiff continued to litigate Smith v. Priolo

2   after he returned for SJGH and the case eventually settled.  Defendants further assert that

3   plaintiff's retaliation claim fails as a matter of law because plaintiff cannot show that he was

4   deprived of a medically necessary procedure because of Rodriguez's alleged comments.  See ECF

5   No. 76-1 at 6-7.

6          Defendants are correct that plaintiff does not appear to allege that defendants' actions

7   chilled plaintiff's speech.  However, plaintiff "may still state a claim if he alleges he suffered

8   some other harm."  See Brodheim, 584 F.3d at 1269.  As discussed above, defendants' evidence

9   establishes that plaintiff did not have a bleeding kidney or lacerated spleen on November 8, 2012,

10  nor did plaintiff have a medical need for surgery on that date or at any time thereafter.

11  Accordingly, even if Rodriguez made comments attempting to interfere with plaintiff's surgery

12  date, Rodriguez' comments did not cause plaintiff harm.  Plaintiff's failure to receive surgery was

13  not a result of Rodriguez's actions, but was caused by the fact that plaintiff had no medical need

14  for surgery.  Accordingly, plaintiff's retaliation claim fails as a matter of law because plaintiff

15  cannot establish that he suffered harm as a result of Rodriguez's actions.

16         For the same reasons, plaintiff cannot establish that Rodriguez took an action that was

17  adverse to plaintiff.  As set forth above, the interest asserted in a retaliation claim is the right of be

18  free of conditions that would not have been imposed but for the alleged retaliatory motive.  In the

19  instant case, the only condition plaintiff complains of – not receiving surgery – resulted not from

20  defendant's alleged comments, but from the fact that plaintiff did not need surgery.  In other

21  words, regardless of defendant's actions, plaintiff would not have received surgery for his

22  bleeding kidney and lacerated spleen because plaintiff did not have a bleeding kidney or lacerated

23  spleen.  On this record, a reasonable jury could not conclude that defendant Rodriguez took an

24  adverse action against plaintiff when he attempted to postpone a surgery that plaintiff did not

25  need.

26         Because a reasonable jury could not conclude that defendant Rodriguez took an adverse

27  action against plaintiff, or that plaintiff suffered harm as a result of Rodriguez's alleged

28  comments, plaintiff cannot satisfy the first or fourth elements of a First Amendment retaliation

1   claim.  Accordingly, the undersigned need not reach the remaining elements, and defendant
2   Rodriguez should be granted summary judgment on this claim.

3       VII.    Conclusion

4       For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendant
5   Rodriguez and Singh's motion for summary judgment (ECF No. 76) be granted.

6       These findings and recommendations are submitted to the United States District Judge
7   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty one days
8   after being served with these findings and recommendations, any party may file written
9   objections with the court and serve a copy on all parties.  Such a document should be captioned
10  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
11  failure to file objections within the specified time may waive the right to appeal the District
12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: September 30, 2016

14
ALLISON CLAIRE
15                                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       21